The complainant and defendant were married in December, 1908, and from thenceforth resided in the State of New Jersey until the year 1922, when they began to live separately and apart. On the 8th day of November, 1923, they signed a paper purporting to be an agreement, wherein he agreed to create a trust fund in the sum of $20,000, to be placed in the hands of the Guarantee Trust Company of Atlantic City, New Jersey, as trustee, for the purpose of paying to her the sum of $1,200 per year, which they agreed to be a just and reasonable sum, payable $100 each month. This paper was *Page 112 
signed by the complainant and the defendant, but was never executed by the Guarantee Trust Company, and no trust estate was ever actually created.
In the said agreement it was agreed:
"(1) The first and second parties hereto will immediately join in the execution of a good and sufficient deed for deeds of conveyance for all of the land now owned by the first party, located in Margate City, New Jersey, to the said trustee as grantee."
She did join in certain conveyances of the said land, not to the Guarantee Trust Company, but to purchasers. This agreement, purporting to be tripartite, but executed by only two of the parties, is incomplete and binds nobody. Emery v. Neighbour,7 N.J. Law 142. My attention has not been called to any decision in New Jersey which in any way abrogates this rule.
In Calame v. Calame (Court of Errors and Appeals),25 N.J. Eq. 548, the chief-justice commented as follows:
"If, therefore, in the present case, a trustee had been a party to this agreement, the equitable validity of it could not have been drawn in question," and affirmed the opinion of the vice-chancellor in the same case, reported in 24 N.J. Eq. 440,
wherein the husband had proposed to make over to his wife certain property in this state, and to pay also the sum of $2,000 as her portion upon a separation between them, which offer, being accepted by the wife, he refused to fulfill. Upon a bill for divorce, alimony and maintenance, his own estimate and offer were adopted by the court as a guide of its judgment in regard to the amount and kind of provision to be allowed to the wife, and a decree was made accordingly for the conveyance of the property and the payment of the money.
The first cause of action, which is based entirely upon this agreement, must fall.
The second cause of action is that he would create a trust fund or otherwise provide support and maintenance for the complainant in the sum of $100 per month, which sum was agreed to be a just and reasonable sum, and that the consideration *Page 113 
therefor was that they should continue to live separately and apart and that she would release her dower interest in certain lots of land, and that he paid said sum of $100 per month until June, 1929; that from June, 1929, to 1931, he paid the sum of $50 per month; that in March, 1931, he paid the sum of $25 per month, and since that time he has made no payments. There seems to be no doubt but that this agreement was made and for a long time carried out by the defendant.
There remains, therefore, the question concerning the Pennsylvania divorce. Even if there was collusion in this case, the defendant therein cannot now take advantage of such fact, because the parties are in pari delicto. Paffen v. Paffen,94 N.J. Eq. 356.
In Nichols v. Nichols, 25 N.J. Eq. 60, Chancellor Runyon, held:
"When a decree of divorce has been acquiesced in for several years, and the plaintiff has again been married, the court will not disturb the decree for the purpose of giving alimony. Such intervention should be based on public policy, but no such reason should suffice where, after the acquiescence of both parties in the decree for four years, an innocent person has been involved by marriage, and the opening of the decree would involve her in distress, and perhaps disgrace."
Such is the situation in this case, and the divorce in Pennsylvania will not be set aside.
A decree will be advised in accordance with these views. *Page 114